[Civ. No. 54730. First Dist., Div. Four. June 22, 1983.]

In re the Marriage of EILEEN SOHN and ROBERT ALLEN RATSHIN.
EILEEN SOHN RATSHIN, Appellant, v.
ROBERT ALLEN RATSHIN, Respondent.

## Counsel

William M. Hilton for Appellant.

Roger R. Brandon and Howell & Hallgrimson for Respondent.

## Opinion

POCHÉ, J.—Eileen Sohn Ratshin appeals from an order denying her motion to set aside and vacate an order of the superior court modifying an Illinois custody decree. ▪ ▬▬▪ (Code Civ. Proc., § 473.)[1]

---

[1]The order denying a motion to vacate a judgment is appealable as a final order after judgment (Code Civ. Proc. § 904.1, subd. (b)). (*County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105, 110-111 [183 Cal.Rptr. 741], cert. den., 460 U.S. 1051 [75 L.Ed.2d 929, 103 S.Ct. 1497].)

We reverse.

## FACTS

Eileen and Robert were divorced in Illinois in May of 1970. Custody of their only child, Nicole, born June 13, 1968, was awarded to Eileen. Robert was awarded visitation rights and ordered to pay child support. In 1979 Robert filed in the Circuit Court of Cook County, Illinois, a petition to change custody; that petition was denied by order dated August 21, 1979.

Nicole and Eileen moved to New York in September of 1979 and resided there until April of 1980. At that point Nicole moved to Toronto, Canada, where she resided with a maternal aunt and uncle; Eileen returned to Illinois in April of 1980 and remained there during all subsequent proceedings. About the beginning of September of 1980, Nicole came to her father's home in San Mateo, California. Robert described the arrangement as being for an "indeterminate period"; Eileen's understanding was that Nicole was only visiting her father, that there would be no custody arguments and that Robert would return Nicole to her "as soon as [Eileen] asked for her."

Robert registered the Illinois custody decree in San Mateo County on October 15, 1980, and filed an order to show cause for modification of that decree. On the same day Robert obtained a temporary order granting him custody of Nicole pending hearing on the order to show cause which was set for December 11, 1980.

The hearing on the order to show cause was continued until December 18, 1980. At that hearing neither Eileen nor counsel representing her was present. Eileen was residing in Illinois. On the basis of the pleadings, the recommendation of the Conciliation Court, and the testimony of Nicole, the trial court issued an order the next day awarding the "care, custody, and control" of Nicole to Robert, and granting reasonable visitation rights to Eileen.

On February 19, 1981, Eileen filed a motion to set aside the order pursuant to Code of Civil Procedure section 473, on the ground that the superior court of California lacked jurisdiction to modify the Illinois decree under the Uniform Child Custody Jurisdiction Act (Uniform Act, Civ. Code, §§ 5150-5174). Eileen also sought an award of attorney's fees and costs.

The matter came for hearing on March 10, 1981. The trial court issued a memorandum of intended decision on March 25, 1981, wherein it found that the requirements of Civil Code section 5152, subdivision (b), had been met for the following reasons: "(a) The child expresses a strong desire to

remain with her father in this state; [¶] (b) The child had not resided in the State of Illinois for over one year prior to coming to California and the filing of respondent's motion to modify custody; [¶] (c) The child's and other's declarations contain compelling data with respect to what is in the best interests [of the child] at the present time; and [¶] (d) The proof shows there is available in this state substantial evidence concerning her present and future care, protection, training and personal relationships. [¶] The Court is not unmindful that mere physical presence in this state of the child is not sufficient to confer jurisdiction; indeed, had the child resided in Illinois for six months prior to the filing of respondent's motion, this Court would be compelled by the Uniform Act to find no jurisdiction here. However, not only was the child's home state not Illinois at the time of the filing, but petitioner was not even a resident of that state between September, 1979, and April, 1980, petitioner apparently having returned to Illinois when the child came to California. [¶] By holding that California has jurisdiction, however, it does not necessarily follow that Illinois does *not* have jurisdiction. One might argue that Illinois has lost jurisdiction because 'all the persons involved have moved away or the contact with the state has otherwise become slight' (Comment to Sec. 14 of the Uniform Act [Sec. 5163, California Civil Code]). However, that is a question best determined in the proceeding now underway in Illinois. Pending that determination, and, if Illinois finds jurisdiction to exist concurrently there, a review of the factors bearing upon what is in the child's best interest, hopefully, by investigation and report to the Court by the appropriate agency there, this Court will make such orders as will protect the *status quo*. Petitioner's motion for attorney's fees will be denied." (Italics in original.) The court next indicated it had been unsuccessful in its attempts to reach the Illinois court in April.

A formal order denying the motion to set aside the custody award and denying the request for attorney's fees was filed on July 16, 1981.

We have taken judicial notice of custody proceedings initiated by Eileen in Illinois in February of 1981. Initially her petition there was denied for lack of jurisdiction, but that decision was reversed in April of 1982 by the Appellate Court of Illinois, First Judicial District. The matter was remanded to the trial court for a determination, inter alia, of Illinois' jurisdiction under the Uniform Act. On remand, the trial court determined "That the Circuit Court of Cook County, Illinois, is not now nor was it at any time since October 16, 1980, a convenient forum in which to make a custody determination as to the minor child, Nicole. The Superior Court in the State of California for San Mateo County is and was a more convenient forum to determine issues concerning Nicole." The court thus ordered that it "shall decline jurisdiction in this cause." That decision was modified on August

5, 1982, in respects not pertinent to the instant appeal. Eileen has also appealed from that order.

<h2 style="text-align:center">Discussion</h2>

<h3 style="text-align:center">A. Jurisdiction</h3>

The authority of California to modify an out-of-state custody decree is set forth in Civil Code section 5163, subdivision (1). (*Kumar v. Superior Court* (1982) 32 Cal.3d 689, 695-696 [186 Cal.Rptr.772, 652 P.2d 1003].) That section provides: "(1) If a court of another state has made a custody decree, a court of this state *shall not modify that decree unless* (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction." (Italics added.)

■ On December 18, 1980, the date California modified the Illinois custody decree, did Illinois *then* have jurisdiction under the "jurisdictional prerequisites" of the Uniform Act? (See § 5152.)[2] If so, Illinois' power to modify its own decree remained "exclusive and unabated" (*Kumar v. Superior Court, supra,* 32 Cal.3d at p. 697) unless it had declined to assume jurisdiction to modify its own decree. (§ 5163, subd. (1)(a).)

---

[2]Section 5152 sets forth the manner by which a state acquires jurisdiction under the act: Section 5152 provides: "(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met: [¶] (a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state. [¶] (b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. [¶] (c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent. [¶] (d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction. [¶] (2) Except under paragraphs (c) and (d) of subdivision (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination. [¶] (3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

As Nicole's "home state", Illinois had jurisdiction to enter the initial decree under subdivision (1)(a) of section 5152. (*Kumar* v. *Superior Court, supra,* at pp. 696-697.)[3] However, after Nicole left Illinois, that state's jurisdiction to modify its decree was dependent upon the existence of a "significant connection" between Nicole and at least one of her parents with Illinois. (§ 5152, subd. (1)(b).)

Because the trial court made no finding with respect to Illinois' jurisdiction, this court must.[4]

We find the jurisdictional facts of the instant case to be legally indistinguishable from those of *Kumar* v. *Superior Court, supra,* 32 Cal.3d 689. There the California Supreme Court was called upon to determine the authority of California to modify an out-of-state custody decree under the Uniform Act. There, as here, the superior court failed to consider the provisions of Civil Code section 5163. (At pp. 695-702.)

In both cases the child was absent from the decree-rendering state for more than a year. Although the child in *Kumar* was absent for 18 months at the time of commencement of the California proceedings the California Supreme Court did not hesitate to find a "significant connection" with the home state. In the case at hand, therefore, the shorter 13-month absence cannot be deemed to be less than a "significant connection."

But section 5152, subdivision (1)(b), as we have noted, requires the home state to retain a significant connection not only with the child but also with

---

[3]"Home state" is defined as "the state in which the child immediately preceding the time involved lived with . . . a parent . . . for at least six consecutive months . . . . Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." (Civ. Code § 5151, subd. (5).)

[4]The trial court made no finding as to Illinois' jurisdiction but noted that there may be "concurrent jurisdiction" and that that determination is "best determined in the proceeding now underway in Illinois." The court did not, however, await Illinois' determination, but instead rendered its order awarding custody to Robert.

In treating the competing jurisdictional claims of California and Illinois as "concurrent jurisdiction" the trial court impliedly recognized that Illinois continued to have a significant connection with both Nicole and Eileen. However, the concept of concurrent jurisdiction has no place in the area of jurisdiction to modify out-of-state custody decrees under the Uniform Act. "The confusion can be avoided by clearly distinguishing between initial and modification jurisdiction. [¶] *Initial* Jurisdiction is determined by the guidelines of section 5152, which point to the state with the closest connections to the child and to information about his present and future well-being. *Modification* jurisdiction is perhaps best viewed as an extension of the recognition and enforcement provisions of the Uniform Act. [Citation.] California is not effectively enforcing the New York decree if it modifies the decree as soon as the child has spent six months within its borders. Under section 5163, the strong presumption is that the decree state will continue to have modification jurisdiction until it loses all or almost all connection with the child. If that state has lost contact, the analysis begins again with section 5152 to determine which other state has closest contact." (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 699.)

one of her parents. Here Eileen's residency in the decree-rendering state was not unbroken: she left to reside in New York for seven months but then returned in April of 1980 to Illinois and was living in Illinois at the time the proceedings commenced in California. This short hiatus in a residency stretching over the 12-year life span of the child is not sufficient to dissolve the significant connection both Eileen and Nicole have with Illinois. "*'Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.'*" (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 696, citing Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under UCCJA* (1981) 14 Fam.L.Q. 203, 214-215, italics in original.)

Since Illinois had jurisdiction at the time California purported to modify the Illinois decree, California's exercise of jurisdiction can be upheld only if prior to the California order Illinois "has declined to assume jurisdiction to modify the decree . . . ." (§ 5163, subd. (1).) No such declination had taken place at that time.

However Robert urges this court to construe the later Illinois decision declining to exercise jurisdiction as curative. We decline to do so for three reasons. First, the Illinois decision is not yet final. Second, this court has no way of knowing whether Illinois' reluctance to exercise its jurisdiction was premised on the reality that California had already seen fit to take over the role of determining Nicole's custodial fate. Finally, such a result flies straight into the face of the purposes of the Uniform Act: avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflict over custody, deterring abduction and unilateral removal of children, avoiding relitigation of another state's custody decision, and promoting exchange of information and other mutual assistance between courts of sister states. (§ 5150.)

Here the fundamental jurisdictional error of the California court was purporting to exercise jurisdiction to modify the Illinois decree without first making one of the express findings required by section 5163: either that Illinois had at that time no jurisdiction or that Illinois had prior to that time declined to exercise such jurisdiction.

The express purposes of the Uniform Act are best served by setting aside the modification order and remanding to the trial court with directions to communicate with the Illinois court and to request that court to determine whether in light of this opinion it now declines to exercise jurisdiction. If

the Illinois court declines to exercise jurisdiction the trial court may reinstate the modification order.

In light of this result, we need not consider Eileen's alternative contentions that California should have declined to exercise jurisdiction pursuant to Civil Code section 5157, subdivisions (1) and (2).[5]

## B. Attorney's fees and costs

Eileen's request for an award of attorney's fees and costs in the proceedings below (see Civ. Code § 4370) was denied without explanation ██ ██ ██ ██ Although the record reveals a substantial disparity in the relative incomes of Eileen and Robert, we have no basis upon which to review the denial because the court made no finding as to their respective needs and incomes.[6] On remand the trial court is directed to conduct further proceedings in the matter of Eileen's eligibility for attorney's fees both for the modification proceedings (cf. *Perry* v. *Superior Court* (1970) 7 Cal.App.3d 236, 243-244 [86 Cal.Rptr. 607]) and for this appeal. (*In re Marriage of Pearce* (1978) 84 Cal.App.3d 221, 223 [148 Cal.Rptr. 509].)

---

[5]Civil Code section 5157 provides in pertinent part: "(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction for purposes of adjudication of custody if this is just and proper under the circumstances. [¶] (2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances."

[6]An award of attorney's fees requires a showing of necessity by the applicant, and a finding of necessity by the court. (*In re Marriage of Gonzales* (1975) 51 Cal.App.3d 340, 344 [124 Cal.Rptr. 378]; *Martins* v. *Superior Court* (1970) 12 Cal.App.3d 870, 876 [90 Cal.Rptr.898].) "Requisite to the granting of such an award is a finding that the award is necessary which involves a twofold determination whether the applicant is in need of funds to pay counsel, and whether the [action] is being prosecuted in good faith." (*Hicks* v. *Hicks* (1967) 249 Cal.App.2d 964, 969 [58 Cal.Rptr. 63]; see also, *Chapman* v. *Tarentola* (1960) 187 Cal.App.2d 22, 25-26 [9 Cal.Rptr. 228].)

In Eileen's financial declaration filed with the court, she listed her gross and net monthly income as "$0," she indicated that she had paid her attorney $50 and that their arrangement for fees and costs was "$100.00 per hour for all time charged; to be billed and paid per mutual agreement."

In Robert's financial declaration, he listed his gross monthly income as $6,250 and net monthly income as $3,645.73. His total monthly expenses were listed as $3,544.99.

Finally, Eileen's attorney filed a declaration and memorandum of costs and attorney's fees indicating that his fees and costs from January 19, 1981 to March 10, 1981 were in excess of $3,000.

## CONCLUSION

The order is reversed and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

Christian, Acting P. J., and Schwartz, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.