[No. F005497. Fifth Dist. Apr. 9, 1986.]

In re the Marriage of MINDY and NEAL H. PEDOWITZ.
NEAL H. PEDOWITZ, Respondent, v.
MINDY PEDOWITZ, Appellant.

**COUNSEL**

Warren L. Williams for Appellant.

Neal H. Pedowitz, in pro. per., for Respondent.

**OPINION**

**BROWN (G.A.), P. J.**—Neal and Mindy Pedowitz were married on January 17, 1977. On October 30, 1979, a child named Aryn was born to the

marriage. They moved to Fresno, California, shortly after their marriage. On March 19, 1982, a final judgment of dissolution of the marriage was filed in the Superior Court of Fresno County, California. The parties were granted joint legal custody, with physical custody in Mindy. Neal was granted periods of visitation and was required to pay all travel expenses for Aryn's visits.

On December 21, 1984, Neal filed in the dissolution proceeding in Fresno a petition for modification of the judgment of dissolution in which he seeks to require Mindy to "pay one-half travel expense for adult accompanying minor in airplane during visitation periods."

After a hearing on January 23, 1985, the court issued its decision on February 22, 1985, in which it found California had exclusive continuing jurisdiction and ordered the dissolution decree modified in accordance with the prayer. Mindy appeals.

In the meantime, on January 21, 1985, Mindy filed a petition to establish and modify the California decree in the appropriate Florida trial court.[1] In her petition she sought to reduce Neal's visitation privileges. Neal appeared in that proceeding. After a hearing on April 1, 1985, the Florida court issued a decree modifying the California decree in accordance with Mindy's prayer. An appeal was taken from the Florida decree by Neal, and so far as this record shows is still pending in the Florida Court of Appeal.

Though both the California and Florida courts were made aware of the proceeding pending in the other jurisdiction, neither court stayed the proceeding pending in its court and neither communicated with the other "to the end that the issues may be litigated in the appropriate forum." (Civ. Code,[2] § 5155, subd. (3).)

Both California and Florida have adopted the Uniform Child Custody Jurisdiction Act (UCCJA), California in 1973 and Florida in 1977. (California, §§ 5150-5174; Florida, §§ 61.1301-61.1348, Fla. Stats. 1983.)

The issue is whether California or Florida properly assumed and exercised jurisdiction over modification proceedings.

Shortly after the dissolution, Mindy, with Aryn, moved to Florida via New York and has continued as a resident of Florida since then. Between

---

[1] Circuit Court of the Seventeenth Judicial District.

[2] All statutory references are to the Civil Code unless otherwise indicated.

June 1982 and May 1983, Neal lived in Florida. He stayed about one-half the time with Mindy and Aryn and one-half the time by himself.

As of the time Neal filed this modification proceeding in California he was living in Fresno, studying for the State Bar of California examination, having attended law school for four years.

Since returning to California he has exercised his visitation rights in California with Aryn during the entire month of August 1984 and between December 21, 1984, and January 1, 1985.

### DISCUSSION

We begin with a discussion of *Kumar* v. *Superior Court* (1982) 32 Cal.3d 689 [186 Cal.Rptr. 772, 652 P.2d 1003] (*Kumar*), California's leading Supreme Court case in this area. In *Kumar* the husband and wife were divorced in New York in 1974. The wife was awarded custody of their minor child. The husband, wife and minor child continued to live in New York until April 1979 when the wife took the minor to California. In late 1980 the wife sought an order to show cause in California to modify the visitation and support provisions of the New York decree. The husband moved to dismiss the order to show cause on the ground California lacked subject matter jurisdiction.

The husband also moved in New York to modify the decree. On March 25, 1981, the New York court determined it had jurisdiction and modified the custody and visitation provisions of the decree.

The California trial court denied the motion to dismiss, and the husband sought mandate. The Supreme Court, concluding that New York had continuing exclusive jurisdiction to modify its own decree, issued a writ directing the trial court to dismiss the California proceeding.

The court first stated the purpose of the UCCJA: "The Uniform Act . . . was promulgated for the stated purposes of avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflict over custody, deterring abductions and unilateral removals of children, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of sister states. (Uniform Act, § 1; § 5150.)" (*Id.*, at p. 695, fn. omitted.)

■ The court then held that section 5163 of the UCCJA[3] governs the disposition of the case and that New York, the state that initially rendered the decree, retained exclusive continuing subject matter jurisdiction over custody issues until "'all persons involved have moved away or the contact with the state [New York] has otherwise become slight . . . .' (9 U. Laws Ann. (1979 ed.) § 14, p. 154.)" (*Kumar v. Superior Court, supra,* 32 Cal.3d at p. 698.) Quoting from Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA* (1981) 14 Fam.L.Q. 203, 214-215, the Supreme Court reiterated: "'. . . Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*' (Italics added; . . .)" (32 Cal.3d at p. 696.)

■ The court then instructed that only when all parties have lost contact with the state rendering the initial decree does the analysis begin again under section 5152[4] to determine which other state has the closest contact.

---

[3]Section 5163 provides in pertinent part: "(1) If a court of another state has made a custody decree, a court of this state *shall not modify that decree* unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction." (Italics added.)

[4]Section 5152 provides as follows: "(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met: [¶] (a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state. [¶] (b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. [¶] (c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent. [¶] (d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction. [¶] (2) Except under paragraphs (c) and (d) of subdivision (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination. [¶] (3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

In footnote 12 on page 699 of the opinion in *Kumar* the court cited a number of California cases that incorrectly proceeded on the assumption that section 5152 is the place to begin the analysis in a modification proceeding. (See also *In re Marriage of Ratshin* (1983) 144 Cal.App.3d 974 [192 Cal.Rptr. 891]; *Peery* v. *Superior Court* (1985) 174 Cal.App.3d 1085 [219 Cal.Rptr. 882].)

■ Before proceeding to an application of the above principles to the facts of this case, we must examine the Federal Parental Kidnapping Prevention Act of 1980 (28 U.S.C. § 1738A, eff. July 1, 1981) (federal act). The provisions of the federal act clearly indicate a congressional intent that the act be applied in all interstate custody disputes, the general purposes of the federal act being similar to those of the UCCJA. (*Debra S.* v. *Roger S.* (1982) 116 Misc.2d 264 [455 N.Y.S.2d 723]; 2 Markey, Cal. Family Law, § 22.20, p. 22-44.12; Cong. Findings and Declaration of Purposes for Parental Kidnapping Act of 1980, § 7(c), of Pub.L.No. 96-611, 94 Stat. 3566.)

While California has not expressly so held, all other states that have discussed the issue have held that the federal act preempts state law in determining when jurisdiction can be exercised in interstate custody matters. Thus, in *Arbogast* v. *Arbogast* (W.Va. 1984) 327 S.E.2d 675, 679, the court stated: "As a federal jurisdictional statute, the PKPA establishes a policy of federal preemption in enforcement of out-of-state custody disputes which, under the Supremacy Clause, takes precedence over state law and must be consulted first in determining whether the [out-of-state] decree is entitled to enforcement here." (Fn. omitted.) (See also *Flood* v. *Braaten* (3d Cir. 1984) 727 F.2d 303; *Marks* v. *Marks* (1984) 281 S.C. 316 [315 S.E.2d 158]; *Wheeler* v. *Buck* (Ala.Civ.App. 1984) 452 So.2d 864; *Ex parte Lee* (Ala.Civ.App. 1983) 445 So.2d 287; *Wachter* v. *Wachter* (La.App. 1983) 439 So.2d 1260; *Flannery* v. *Stephenson* (Ala.Civ.App. 1982) 416 So.2d 1034; *Tufares* v. *Wright* (1982) 98 N.M. 8 [644 P.2d 522]; *Voninski* v. *Voninski* (Tenn.App. 1982) 661 S.W.2d 872; and *State* ex rel. *Valles* v. *Brown* (1981) 97 N.M. 327 [639 P.2d 1181].)

We concur with the above authorities that the federal act preempts state law.

Section 1738A of the federal act in pertinent part states: "(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State. . . . [¶] (c) A child custody determination made by a court of a State is consistent with the provisions of this

section only if—[¶] (1) such court has jurisdiction under the law of such State; and (2) one of the following conditions is met: . . . [¶] (E) *the court has continuing jurisdiction pursuant to subsection (d) of this section.* [¶] (d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section *continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.* . . . [¶] (f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—[¶] (1) it has jurisdiction to make such a child custody determination; and [¶] (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination. [¶] (g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination." (Italics added.)

It is apparent the federal act establishes a strong preference for the determination of a custody dispute in the state that issued the initial decree and conforms generally with section 5163 of the California act and the holding in *Kumar.* The Supreme Court noted in *Kumar* that "the federal legislation would compel the result we reach in the instant case." (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 701.)

■ In describing the continuing relationship between the state in which the decree is initially rendered and the child or either of the parents in modification proceedings, section 1738A(d) of the federal act uses the language "such State remains the residence of the child or of any contestant." *Kumar* adopts the language " 'all persons involved have moved away or the contact with the state has otherwise become slight . . . .' " (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 698, citing 9 U. Laws Ann. (1979 ed.) § 14, p. 154.) Professor Bodenheimer uses the language "where one parent or another contestant continues to reside" and "[o]nly when the child and all parties have moved away . . . ." (Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, supra,* 14 Fam.L.Q. 203, 214-215.)

It appears that the wording used in the various descriptions of the relationship between one of the contestants, the child and the initial decree state is in a general sense describing the same thought. However, as we have noted, if there is a difference the more precise language of the federal act governs.

■ Turning to the facts of this case, quite clearly the California court had exclusive, continuing jurisdiction if after the dissolution California remained Neal's residence, or, to put it differently, Neal did not move away.

The evidence in the record on this point is slight. As has been pointed out, Mindy and the child moved permanently to Florida via New York and have resided there since. In June 1982 Neal went to Florida and stayed there until May 1983. During that period he lived about one-half of the time with Mindy and Aryn and one-half of the time by himself. Neal presented no direct evidence that when he left Florida he moved back to California, though he was in California during the month of August 1984 and from December 21, 1984, through January 1, 1985, because during those periods Aryn visited him in California. As noted, he filed the petition for modification herein on December 24, 1984. While it may be surmised that he was here during all of the intervening months between those dates, the record does not expressly show that. Nor does it show when he returned to California after he left Florida in May 1983. At the hearing on January 23, 1984, he testified he had been to law school for four years and was studying for the California State Bar examination. The name of the law school or its location does not appear, nor do the periods during which he attended appear.

The word "remain" used in the federal act is defined by the dictionary as "to be left or left over when the rest has been taken away, destroyed, or disposed of in some way[;] to stay while others go[;] to stay in the same place . . . ." (Webster's New World Dict. (2d college ed. 1982) p. 1201.) Thus, whether Neal remained or continued as a resident of California until he filed his petition to modify depends upon whether he was temporarily absent with the intention of returning to California, his home, or if he moved from California and stayed in Florida during the 11 months with the intention of making Florida his residence and his home.

As will readily appear from our recitation of the evidence in the record, sufficient facts do not exist to support a finding either way. Accordingly, the implied finding of the trial judge that Neal remained or continued as a resident of California is not supported by the evidence in the record. The cause will have to be remanded to the trial court for the purpose of developing additional evidence bearing upon the issue of whether Neal remained a resident of California during his absence while in Florida and whether he has continued as a resident of California since he left Florida.

Neal relies upon *In re Marriage of Ratshin, supra,* 144 Cal.App.3d 974. In that case the husband and wife were residents of and were divorced in Illinois. The wife was awarded custody of a minor child with reasonable

visitation rights in the husband. The opinion states the wife and child "moved to New York in September of 1979 and resided there until April of 1980." (*Id.*, at p. 976.) The wife and the child then returned to Illinois. In 1980 the child went to California to live with the husband. In December 1980 the California trial court modified the Illinois decree and awarded custody to the husband. The wife moved in California to set aside the trial court's order. That motion was denied. Following *Kumar* the Court of Appeal reversed, holding Illinois had exclusive jurisdiction notwithstanding the wife's absence from Illinois for nine months. The court stated: "But section 5152, subdivision (1)(b), as we have noted, requires the home state to retain a significant connection not only with the child but also with one of her parents. Here Eileen's residency in the decree-rendering state was not unbroken: she left to reside in New York for seven months but then returned in April of 1980 to Illinois and was living in Illinois at the time the proceedings commenced in California. This short hiatus in a residency stretching over the 12-year life span of the child is not sufficient to dissolve the significant connection both Eileen and Nicole have with Illinois. '*"Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required."*' (*Kumar v. Superior Court, supra,* 32 Cal.3d at p. 696, citing Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under UCCJA* (1981) 14 Fam.L.Q. 203, 214-215, italics in original.)" (*Id.*, at pp. 979-980.)

We do not regard *Ratshin* as determinative of the effect of extended absence of a contestant from the initial decree state. First, the court predicates its conclusion upon the provisions of section 5152, subdivision (1)(b), which requires "a significant connection not only with the child but also with one of her parents." (*In re Marriage of Ratshin, supra,* 144 Cal.App.3d at pp. 979-980.) As we and other courts have noted, however, under *Kumar* section 5152 is applicable to initial custody and not applicable to modification of custody situations. Accordingly, the wrong criteria was used by the *Ratshin* court. Secondly, the court does not discuss the controlling requirement of the federal act (§ 1738A(d)) that "such state [referring to the initial decree state] remains the residence of the child or of any contestant."

■ Another problem is present in this case. Though both the Fresno County Superior Court and the Florida trial court were aware that a modification proceeding was pending in the other court, neither court attempted to communicate with the other as is required by the UCCJA.

Section 5155, subdivision (3), provides in pertinent part: "If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court as-

sumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 5168 through 5171. . . . If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum."

Informal advice of the pendency of the other proceeding is sufficient. (*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 899-900 [168 Cal.Rptr. 345]; 2 Markey, Cal. Family Law, § 22.15[2], pp. 22-35; Cal. Family Law Practice (6th ed. 1985) §§ C.34, C.35, p. C-17.)

By the terms of the statute itself, once the court is so informed during the course of the proceeding, the court has a sua sponte duty to communicate with the court in the state in which concurrent proceedings are pending.

■ At this stage the matter is further complicated by the pendency of the Florida order in an appellate court of that state. Confronted with a similar situation, the Alaska Supreme Court in *Rexford* v. *Rexford* (Alaska 1980) 631 P.2d 475, 479-480, held: "If a final decree has already been entered in California, then the stay on the proceeding in this state should be continued, pending the outcome of any appeal that [appellant] might take in California on the issue of jurisdiction. Should a California appellate court conclude that the superior court in California did not have jurisdiction to hear the matter, [appellant's] petition in this state may be renewed."

Because additional evidence will have to be taken on the issue of Neal's continuing residency in California during and after his 11-month absence in Florida, a slightly modified version of the Alaska solution is appropriate.

The judgment is reversed and the cause is remanded to the superior court to take additional evidence relevant to Neal's status as a resident of California between the time Neal left California to go to Florida and the time that he filed the petition herein. If the trial court determines it has jurisdiction, it shall, pursuant to section 5155, subdivision (3), stay the proceedings pending the finality of the decision in the Florida appellate court; thereafter the trial court shall communicate with the trial court in Florida and enter a new judgment in accordance with its findings and the principles set forth in this opinion.

Each party shall bear his/her own costs on appeal.

Hamlin, J., and Reid, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.