The PEOPLE of the State of Colorado,
In the Interest of E.E.A., a Child, and
Concerning K.A., Petitioner–Appellee,

v.

J.M., Respondent–Appellant.

No. 91CA0865.

Colorado Court of Appeals,
Div. II.

Dec. 17, 1992.

Rehearing Denied Jan. 28, 1993.

Certiorari Granted July 6, 1993.

Clanahan Tanner Downing & Knowlton, Thomas C. McKee, Dino A. Ross, Denver, for petitioner-appellee.

Dixon and Snow, P.C., Steven Janiszewski, Denver, for respondent-appellant.

Daniel E. Muse, City Atty., J. Creig Coogan, Asst. City Atty., Denver, for amicus curiae Denver Dept. of Social Services.

Opinion by Judge PLANK.

In this paternity action, respondent, J.M., appeals from a trial court order denying his C.R.C.P. 60(b)(3) motion to set aside a prior judgment declaring him the father of E.E.A. (child). We affirm.

On October 11, 1984, petitioner, K.A., brought an action seeking a paternity determination and order for reasonable child support. In the paternity proceedings, blood tests established a presumption that J.M. was the father of the child. On November 17, 1985, the trial court granted summary judgment in favor of petitioner, adjudicating J.M. the biological father of the child. On March 17, 1986, the trial court ordered J.M. to pay child support and attorney fees.

On May 1, 1990, J.M. filed a C.R.C.P. 60(b)(3) motion for relief from judgment and orders. The trial court denied the motion, and this appeal followed.

J.M. contends that the child was not properly made a party to the action. He argues, therefore, that the trial court lacked subject matter jurisdiction to determine the issue of paternity and that the paternity judgment is void. We agree that the child was not properly made a party to this action, creating a jurisdictional flaw. However, we disagree that respondent may now collaterally attack the judgment.

I.

Under the Uniform Parentage Act, as in effect during the paternity proceedings,

§ 19–6–101, et seq., C.R.S. (1986 Repl. Vol. 8B), a child was an indispensable party to a paternity action. Section 19–6–110, C.R.S. (1986 Repl. Vol. 8B) (now codified as § 19–4–110, C.R.S. (1992 Cum. Supp.)); *M.R.D. v. F.M.*, 805 P.2d 1200 (Colo.App.1991).

■ Merely naming an individual in a petition or complaint does not make the person a party to the action; to be a true party, that person must be competent to sue and have the right to control the proceedings, to defend, to present and cross-examine witnesses, and to appeal in his own right. *People in Interest of R.D.S.*, 183 Colo. 89, 514 P.2d 772 (1973); *Jenkins v. Estate of Thomas*, 800 P.2d 1358 (Colo. App.1990).

■ Pursuant to § 13–22–101, C.R.S. (1987 Repl. Vol. 6A), any person under the age of 18 may not sue or be sued without being represented by a guardian ad litem or someone acting in their behalf. Further, the applicable statute precludes either the father or mother from acting on behalf of the child. Section 19–6–110, C.R.S. (1986 Repl. Vol. 8B). Therefore, in order to be a party to a paternity proceeding, a minor child must be represented by a general guardian, a conservator, his next friend, a guardian ad litem, or a similar fiduciary. *See* C.R.C.P. 17(c).

### A.

Mother argues that the child was a party either because he was represented by her attorney or by her as his "next friend." We find no merit to these arguments.

■ Even if we assume that representation by an attorney alone would fulfill the criteria for a child to be a party to a paternity action, the record does not support the contention that mother's attorney was also representing the child. The petition and all pleadings filed through entry of the judgment of paternity were filed by mother, as "petitioner," through her attorneys. The child was not named on any pleading as a petitioner, nor was there any statement on any pleading that mother's attorneys also represented him.

■ Section 19–6–110 provides that a "child's mother or father may not represent the child as guardian or otherwise." The comment to this section in the Uniform Parentage Act indicates that this provision was adopted because the interests of a parent may conflict with those of the child in a parentage action. *See* 9B *Uniform Laws Annot.*, Matrimonial, Family & Health Laws 312 (1987).

Consequently, a mother may not bring an action on behalf of a child as the child's "next friend." *See J.E.S. v. F.F.*, 762 P.2d 703 (Colo.App.1988); *see also People in Interest of T.L.H.*, 701 P.2d 87 (Colo.App. 1984); *cf. Miller v. Sybouts*, 97 Wash.2d 445, 645 P.2d 1082 (1982). Therefore, we find no merit to mother's arguments that the child was properly made a party either through representation by mother's attorney or through mother's representation of the child as his "next friend."

### B.

We further find no merit in the arguments of mother and the amicus curiae, Department of Social Services (Department), that the child does not need individual representation in a paternity action. Mother and the Department argue that, pursuant to the second sentence of § 19–6–110 and C.R.C.P. 17(c), appointment of a guardian ad litem to represent a child in a paternity proceeding is permissive. Therefore, it is contended, as long as the court determines that the child's interests are being adequately represented and the child faces no detriment, the court does not abuse its discretion in not appointing a guardian ad litem to represent the child. We disagree.

When the Uniform Parentage Act was adopted in Colorado, the first three sentences of § 19–6–110 read as follows:

> The child shall be made a party to the action. If he is a minor he shall be represented by his general guardian or a guardian ad litem appointed by the court. The child's mother or father may not represent the child as guardian or otherwise.

Colo. Sess. Laws 1977, ch. 245, § 19–6–110 at 1013. In 1981, the General Assembly, without amending the first or third sentences of § 19–6–110, amended the second sentence to its current form which reads as follows: "If he is a minor, the court may appoint a guardian ad litem." Colo. Sess. Laws 1981, ch. 231, § 19–6–110 at 1028 (now codified as § 19–4–110).

 We reject the assertion that because of this statutory change, it is within the court's discretion to determine whether it is appropriate to appoint a guardian ad litem or other representative to represent the child in a paternity action.

In analyzing the nature and effect of the 1981 legislative amendment to § 19–6–110, our primary task is to ascertain and give effect to the legislative purpose underlying the enactment. And, to ascertain that purpose, we look first to the statutory language employed by the General Assembly and give words their commonly accepted and understood meaning.

 If the statutory language is clear and unambiguous, there is no need to resort to interpretative rules of statutory construction. If, however, statutory language is uncertain as to its intended scope, with the result that the statutory text lends itself to alternative constructions, then a court may appropriately look to pertinent legislative history as well as the circumstances under which the statute was enacted. *Woodsmall v. Regional Transportation District,* 800 P.2d 63 (Colo.1990).

When faced with a statutory ambiguity, a court also may consider the consequences of a particular construction. *Woodsmall v. Regional Transportation District, supra.*

 Furthermore, the General Assembly is presumed to be aware of the judicial interpretations of a statute that it amends. And, it is presumed that the amendment does not change existing law further than is expressly declared or necessarily implied. *5050 S. Broadway Corp. v. Arapahoe County Board of Commissioners,* 815 P.2d 966 (Colo.App.1991).

The legislative history of this statutory change indicates that the primary purpose

behind the 1981 amendment was cost-savings. The General Assembly concluded that thousands of dollars could be saved by eliminating the requirement that a child be represented by a guardian or guardian ad litem in every paternity case. It also concluded that the interests of the child could be represented by the child's parents and that the child, therefore, may not always need individual representation. Consequently, the amendment at issue attempted to make the appointment of a guardian ad litem discretionary with the trial court. Hearings on S.B. 378 before the Senate Judiciary Committee, 53rd General Assembly, First Session (March 11 and 23, 1981); Hearings on S.B. 378 before the House Judiciary Committee, 53rd General Assembly, First Session (April 21, 1981).

However, the General Assembly did not eliminate the requirement that the child be made a party to a paternity action. Therefore, this requirement remained in effect after the amendment to the second sentence.

In our view, this change created an irreconcilable conflict between the application of the first and second sentences.

The first sentence of § 19–6–110 mandates that a child must be made a party to a paternity action, and under § 13–22–101, a minor to be competent to sue or be sued must be represented by an appropriate fiduciary. Further, C.R.C.P. 17(c) prescribes that a child may be represented in a lawsuit by a general guardian, conservator, next friend, guardian ad litem, or other like fiduciary. Moreover, C.R.C.P. 17(c) requires the court to appoint a guardian ad litem for an infant not otherwise represented in an action or to make such other order as it deems proper for the protection of the infant.

Thus, the first sentence of § 19–6–110, together with § 13–22–101 and C.R.C.P. 17, requires a child to be represented individually by a fiduciary in the paternity action. This requirement logically conflicts with the language of the second sentence which attempts to make the appointment of a guardian ad litem discretionary with the trial court.

Divergent policies led to the adoption of the first and second sentences of § 19–6–110. We can find no way to harmonize either the policies or the requirements of the two sentences and must leave that final decision to the General Assembly.

■ In the meantime, however, we must choose the construction of the entire statute which we believe is supported by the weightier policies. We conclude that more significant interests lie behind the construction of § 19–6–110 requiring that a child be made a party and be represented individually by an appropriate fiduciary in every paternity action.

The intent behind the adoption of § 19–6–110 was to ensure that the child be made a party to the action because the child's interests may vary from those of his parents. Now to construe the statute to allow discretionary representation of the child as a party or representation of the child's interests by his parents would be to defeat the express purpose behind the statute as a whole. Therefore, we reject the argument of mother and the Department that the child does not need individual representation in a paternity action.

## II.

Father contends that, since the child was not made a proper party to the proceedings the judgment is void for lack of subject matter jurisdiction and is necessarily vulnerable to a collateral attack. We disagree.

■ We have previously held that failure to join the child as a party is a defect which deprives the court of subject matter jurisdiction. *See M.R.D. v. F.M., supra; In re Marriage of Burkey,* 689 P.2d 726 (Colo.App.1984); *see also Smith v. Casey,* 198 Colo. 433, 601 P.2d 632 (1979); *In re Marriage of De La Cruz,* 791 P.2d 1254 (Colo.App.1990). However, all such holdings resulted from a direct appeal from the original proceeding.

■ Hence, we are left with the issue of whether the jurisdictional flaw can now be attacked collaterally. We hold that the doctrines of claim and issue preclusion prevent the judgment from being attacked collaterally.

While it is important that judgments be made by courts with proper jurisdiction over the action, *Whitten v. Coit,* 153 Colo. 157, 385 P.2d 131 (1963), it is also important that there be a finality to litigation: "The whole policy of the law is against the retrial of issues already litigated by the parties." *State Compensation Insurance Fund v. Luna,* 156 Colo. 106, 107, 397 P.2d 231, 233 (1964); *see also In Re Marriage of Wolford,* 789 P.2d 459 (Colo.App.1989) (strong public policy exists to assure the finality of judgments, which is especially important in family law matters).

■ Thus, under the doctrine of claim preclusion, a judgment on the merits bars a second lawsuit based on the same cause of action. *Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). And, under the doctrine of issue preclusion, a judgment on the merits between the same parties in a prior suit precludes relitigation of any issues litigated and determined in the first cause of action. *Bennett College v. United Bank,* 799 P.2d 364 (Colo.1990).

■ In regard to this paternity proceeding, we hold that the trial court had the authority to determine its own subject matter jurisdiction in the initial case and was competent in finding facts upon which its own jurisdiction depended. *See State ex rel. Danielson v. Vickroy,* 627 P.2d 752 (Colo.1981); *Guthrie v. Barda,* 188 Colo. 124, 533 P.2d 487 (1975).

■ A court can *sua sponte* raise the issue and determine whether it has proper subject matter jurisdiction. *Citizens Concerned for Separation of Church & State v. City & County of Denver,* 628 F.2d 1289 (10th Cir.1989), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). And, when a court does not raise the issue, and enters a judgment on the merits of the action, it is presumed that the court determined that subject matter jurisdiction was proper. *See Hodge v. Hodge,* 621 F.2d 590 (3rd Cir.1980) (when federal court proceeds to judgment, issue of subject matter juris-

diction is *res judicata* even where issue was not litigated); *see also Perry v. Superior Court,* 174 Cal.App.3d 1085, 219 Cal. Rptr. 882 (1985).

Hence, while the trial court erred in determining its own subject matter jurisdiction since the child was not properly made a party to the action, and that error could have been corrected on direct appeal, we hold that the doctrines of claim and issue preclusion now bar any collateral attack by J.M. on the trial court's original jurisdiction.

Of significance here, I Restatement (Second) of Judgments § 12 (1980) states:

Contesting Subject Matter Jurisdiction: When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's jurisdiction in subsequent litigation except if:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe upon the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

Colorado appears to have adopted the essence of this rule in *State Compensation Insurance Fund v. Luna, supra.* There, the Compensation Insurance Fund (Fund) sought to have a judgment entered against it rendered void because the Industrial Commission of Colorado lacked subject matter jurisdiction. The Fund argued that the Commission had exceeded its authority and jurisdiction by adjudicating plaintiff's claim because the original claim was ·not filed within the six month period provided under the applicable statute of limitations. The court held that the Fund had its oppor-

tunity to litigate the issue of jurisdiction on direct appeal, and failed to do so.

In so holding the *Luna* court stated: "[W]here jurisdiction depends upon a factual condition, the existence of which must be found by the tribunal, and the tribunal finds, in an adversary proceeding, that the condition exists, the determination is not subject to collateral attack, even though it might have been reversible on appeal." *State Compensation Insurance Fund v. Luna, supra,* 156 Colo. at 110, 397 P.2d at 233, 234.

This modern rule regarding collateral attacks on subject matter jurisdiction is widely accepted and well reasoned. *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329, 333 (1939) ("it is manifest from numerous decisions that an all-inclusive statement of a principal of absolute retroactivity cannot be justified."). *Hodge v. Hodge, supra* (relitigation of subject matter jurisdiction in subsequent lawsuit is barred by *res judicata* unless there was a manifest abuse of authority by the trial court); *Perry v. Superior Court, supra* ("normal principles of *res judicata* apply to the determination of subject matter jurisdiction unless that policy is outweighed by the policy against allowing a court to act without jurisdiction," 219 Cal.Rptr. at 886); *see also, Vogel v. Vogel,* 178 Conn. 358, 422 A.2d 271 (1979); *In re Marriage of Brown,* 98 Wash.2d 46, 653 P.2d 602 (1982); *Harker v. City of Holyoke,* 390 Mass. 555, 457 N.E.2d 1115 (1983); *Cook v. Cook,* 303 Pa.Super. 61, 449 A.2d 577 (1982); *In Interest of A.E.H.,* 161 Wis.2d 277, 468 N.W.2d 190 (1991), *cert. denied,* — U.S. ——, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991).

 Here, the trial court had the duty to determine its own subject matter jurisdiction as to the paternity proceeding. Although the trial court erred in finding that the child did not have to be made a proper party, this error was based on a statute with inherently contradictory language, and the court did not manifestly abuse its authority in entertaining the action.

Further, father does not dispute that the juvenile court was the proper forum for this action, only that the juvenile court erred in determining its own subject matter jurisdiction under the statute by not making the child a party. He now seeks some five years after the final judgment was rendered to relitigate every issue which he had a full and fair opportunity to litigate in the original action.

 Under such circumstances, public policy strongly militates against allowing further litigation that would be disruptive to family relations. *See In Re Marriage of Wolford, supra.* Furthermore, the error did not prejudice the father; rather, the harmed party in this matter, if at all, is the child. Hence, we hold father is precluded from attacking the subject matter jurisdiction of the trial court collaterally.

If the child were the one seeking relief, different policy considerations would arise and a different result would be warranted. Thus, we hold that, in proceedings such as the one here, collateral attacks on the issue of subject matter jurisdiction are barred by the concepts of issue and claim preclusion only as to the parties in the original suit. *See Harker v. City of Holyoke, supra.* Accordingly, since the child was never a party to the original suit, a collateral attack on the judgment by the child would not be barred.

The order denying respondent's motion is affirmed.

SMITH and TURSI, JJ., concur.