v.

The PEOPLE of the State of Colorado,
In the Interest of M.C., a child,

and

M.C., a child, Respondents.

No. 94SC727.

Supreme Court of Colorado,
En Banc.

April 8, 1996.

David C. Johnston, Paonia, for Petitioner.

McMichael, Burlingame, Multz & Lipton, Donna A. Salmon, Denver, Edward A. Lipton, Grand Junction, for Respondents.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *People in Interest of M.C.*, 895 P.2d 1098 (Colo.App.1994), a case brought by the Department of Social Services (State) on behalf of M.C., a minor child, to determine whether S.O.V. is M.C.'s father and to obtain payment of child support. The issue before us is whether a jury verdict of non-paternity in that case is binding on M.C. by operation of the doctrines of res judicata and collateral estoppel so as to prohibit M.C., who was not made a party to the case before the jury verdict was returned, from later intervening and seeking a determination that

S.O.V. is her father. The trial court denied M.C.'s petition to intervene and granted S.O.V.'s motion to dismiss the case, relying on the conclusion that M.C. is bound by the jury verdict of non-paternity under the doctrines of res judicata and collateral estoppel. The court of appeals reversed on the basis that res judicata and collateral estoppel do not apply because M.C. was neither a party nor in privity with the State in the proceedings that eventuated in the jury verdict. *Id.* at 1102. We conclude that the doctrines of res judicata and collateral estoppel are not applicable because no final judgment had been entered on the jury verdict when M.C. sought to intervene, and M.C.'s motion to intervene was filed in the same case in which the jury verdict was delivered. We also hold that M.C. was not a party or in privity with the State in the proceedings that led to the jury verdict of non-paternity. For these two independently sufficient reasons, we affirm the judgment of the court of appeals, which reverses the trial court's order of dismissal and remands the case to that court for further proceedings.

I.

In November 1989, the State commenced this action by filing a "Petition for Parentage Determination and To Obtain Child Support" on behalf of M.C., who was then eight years old, pursuant to the Uniform Parentage Act, which appears in its present form at sections 19–4–101 to –130, 8B C.R.S. (1995 Supp.). The State petitioned for declaratory and other relief, including a determination that S.O.V. is the father of M.C. and is therefore obligated for medical expenses and support payments for the benefit of the child. M.C. was referred to as the "petitioner" in the initial pleading, but no guardian ad litem or other fiduciary was appointed to represent her. The case was tried to a jury, which determined that S.O.V. is not M.C.'s father and so has no duty to provide financial support for the child. This determination was made notwithstanding evidence of blood test results indicating a 99.9 percent probability that S.O.V. is M.C.'s father.

The State moved for a judgment notwithstanding the verdict or in the alternative for a new trial, and the trial court granted the motion for judgment notwithstanding the verdict. On appeal, the Colorado Court of Appeals reversed, holding that there was sufficient evidence to sustain the jury verdict, and remanded the case for consideration of the State's alternative motion for a new trial, which was based on alleged jury misconduct. *People in Interest of M.C.*, 844 P.2d 1313 (Colo.App.1992).

The trial court held a hearing on April 1, 1993, and denied the new trial motion on the jury misconduct ground but took under advisement an assertion newly presented by the State in conjunction with the motion for new trial that the proceedings were jurisdictionally defective because the child had not been represented by a guardian ad litem.

Thereafter, on April 5, 1993, the trial court in a written order addressed the State's request for a new trial based on the alleged jurisdictional defect resulting from failure to join the child as a party. It concluded that the child was not properly represented and thus was not a party to the action. The court noted, on the one hand, that although the State's contention that the court should therefore grant a new trial because it did not have subject matter jurisdiction "may be technically appropriate," such an argument by the State "is not supported by equity" because the State had previously claimed to represent the child. On the other hand, the court noted that it must balance against such inequity the importance of having "a correct determination of paternity because the present verdict leaves the child fatherless" and because the child, not having been properly represented, would have a continuing right "to pursue a collateral attack on the judgment of non-paternity." Because such lack of finality was not in the best interests of the child, the parents, or the State, the court for the first time ordered appointment of a guardian ad litem for M.C. "to investigate the circumstances presented by the present status of this litigation and to determine whether the Child's interests warrant a collateral attack on the judgment represented by the jury's verdict of non-paternity." The court's order contained no ruling on the request for a new trial but stated that upon

receipt of the guardian ad litem's report it would "schedule a conference with all counsel, including [the guardian ad litem] to determine how to proceed."[1]

The guardian ad litem conducted an investigation and filed a report on June 3, 1993, stating "that it is in [M.C.'s] best interest to exercise her right to collaterally attack the jury verdict of non-paternity." After considering the guardian's report, the trial court set the matter for a status conference with counsel "to determine the procedures to be followed to implement the [guardian ad litem's] recommendation, and to determine if any other disposition short of a new trial is viable." At the status conference on August 5, 1993, the trial court directed the attorney for the child to file a petition on behalf of the child "either in this action or in a new case as his research dictates." The child's attorney then filed a petition for declaration of paternity and a motion to intervene on behalf of M.C., both bearing the same case number as the action that resulted in the jury verdict. On August 17, 1993, the trial court issued a written order that M.C. "shall and hereby is permitted to intervene in the within action." S.O.V. then moved "to dismiss this action based on the doctrines of *res judicata* and collateral estoppel," relying on the jury verdict and stating that the verdict "has been upheld after a direct appeal and is a final judgment." The trial court granted the motion to dismiss, ruling that although the child was not a party to the action preceding the jury verdict, she was in privity with the State, which was acting under the authorization of section 19–4–107, 8B C.R.S. (1995 Supp.), and "through its common law duty under the doctrine of *Parens Patriae*." The court held that M.C. therefore was barred by principles of res judicata and collateral estop-

pel from challenging the jury determination that S.O.V. is not her father.

On appeal, the court of appeals reversed. *People in Interest of M.C.*, 895 P.2d 1098, 1102 (Colo.App.1994). That court held that M.C. was not in privity with the State because the child had interests in the paternity determination of a "different and broader nature" than those of the State. *Id.* As a result, the doctrines of res judicata and collateral estoppel did not apply. *Id.* We granted certiorari to decide whether M.C. is bound by the jury verdict of non-paternity and is thereby precluded from further efforts to obtain a judicial determination that S.O.V. is her father.[2]

## II.

S.O.V. asserts that the doctrines of res judicata and collateral estoppel bar M.C.'s relitigation of the issue of whether S.O.V. is M.C.'s father.[3] We disagree.

 Res judicata, or claim preclusion, "operates as a bar to a second action on the same claim as one litigated in a prior proceeding when there is a final judgment, identity of subject matter, claims for relief, and parties to the action." *City & County of Denver v. Block 173*, 814 P.2d 824, 830 (Colo. 1991). Res judicata binds parties to the action and persons in privity with such parties. *Denver v. Consolidated Ditches Co.*, 807 P.2d 23, 32 (Colo.1991); *People v. Hearty*, 644 P.2d 302, 312 (Colo.1982). The doctrine not only bars litigation of issues actually decided but also any issues that should have been raised in the first proceeding but were not. *City & County of Denver v. Block 173*, 814 P.2d at 830; *Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1973). The

1. The most relevant parts of the trial court's order, which was captioned "Order on People's Request For New Trial (on grounds of jurisdictional defect)" are reproduced in Appendix A to this opinion.

2. We phrased the issue on which we granted certiorari as follows:

 Whether the doctrines of res judicata or collateral estoppel operate to bar M.C., a minor child, from collaterally attacking a jury finding of non-paternity in a prior proceeding brought

by the state seeking recovery for child-support payments.

3. The trial court relied on both res judicata and collateral estoppel in deciding this case. It is not necessary for the purpose of this opinion to determine which of the two doctrines is potentially applicable. The determination would turn on whether the two matters involve the same claim—in which case res judicata would apply—or only the same issue—in which case collateral estoppel would apply. *E.g., Denver v. Consolidated Ditches Co.*, 807 P.2d 23, 32 (Colo.1991).

doctrine of collateral estoppel is broader than the doctrine of res judicata because it applies to claims for relief different from those litigated in the first action, but narrower in that it applies only to issues actually litigated. *City & County of Denver v. Block 173*, 814 P.2d at 824; *Industrial Com'n v. Moffat Cty. Sch. D. RE No. 1*, 732 P.2d 616, 620 (Colo. 1987). Collateral estoppel, or issue preclusion, bars relitigation of an issue if: (1) the issue is identical to that actually adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *City & County of Denver v. Block 173*, 814 P.2d at 831; *Industrial Com'n v. Moffat Cty. Sch. D. RE No. 1*, 732 P.2d at 619–20.

There was no final judgment embodying the jury verdict of non-paternity when the trial court applied the doctrines of res judicata and collateral estoppel to bar M.C.'s claim. Furthermore, M.C. was not a party or in privity with the State in the proceedings that eventuated in the jury verdict. For each of these independently sufficient reasons, the doctrines of res judicata and collateral estoppel do not apply.

### A.

 A final judgment is an essential prerequisite for the applicability of both res judicata and collateral estoppel. The judgment that had been entered on the jury verdict was reversed on appeal and the case was remanded for a ruling on the State's motion for a new trial. *People in Interest of M.C.*, 844 P.2d 1313. At the time the trial

court applied res judicata and collateral estoppel to bar M.C.'s petition for a declaration of paternity, the case had not been concluded. There remained pending the issue of the action to be taken by the court as a result of the failure to appoint a guardian ad litem for M.C. in the proceedings that led to the jury verdict. That issue was raised by the State as a jurisdictional defect after remand of the case by the court of appeals and was taken under advisement by the court in conjunction with the denial of the State's motion for a new trial on jury misconduct grounds. Thus, the court had not entered final judgment but had before it an unresolved application for a new trial based on the failure to appoint a guardian for M.C. Lack of finality is reinforced by the fact that the court in orders entered in the same case subsequent to its appointment of a guardian ad litem on April 5, 1993, continued to treat the case as open. Moreover, M.C.'s petition for declaration of paternity and motion to intervene were filed in that same case, a prior verdict in which was relied upon to establish res judicata and collateral estoppel. The principles of res judicata and collateral estoppel have no applicability to prior rulings in the same pending case. *See Kuhn v. State Dept. of Revenue*, 897 P.2d 792, 795 (Colo.1995) ("res judicata is not applicable to an earlier decision in the same lawsuit").[4] S.O.V. asks us to give res judicata and collateral estoppel effect to earlier determinations in the same action which, prior to the granting of S.O.V.'s motion to dismiss, had not yet resulted in a final judgment. For reasons previously discussed, neither of these doctrines is applicable in such circumstances.

### B.

 Res judicata and collateral estoppel are also inapplicable because M.C. was nei-

---

**4.** The effect of prior judicial determinations in the same lawsuit is governed by the doctrine of law of the case. "Conclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions become the law of the case." *Super Valu Stores v. District Court of Weld County*, 906 P.2d 72, 78–79 (Colo.1995); *Moland v. People*, 757 P.2d 137, 141 (Colo.1988); *People v. Roybal*, 672 P.2d 1003, 1005 (Colo.1983). The law of the case must be followed on remand in subsequent proceedings in the trial court. *Id.; Kuhn v. State Dept. of Revenue*, 897 P.2d 792, 795 (Colo.1995);

*Moland,* 757 P.2d at 141. Prior relevant rulings by a trial court in the same case are generally to be followed by that court unless to do so would result in error or unless changed conditions make the prior ruling no longer sound. *People ex rel. Gallagher v. District Court*, 666 P.2d 550, 553 (Colo.1983). "The doctrine of the law of the case is more flexible in its application to reconsideration by the court making the decision, because there the only purpose of the doctrine is efficiency of disposition." *Roybal*, 672 P.2d at 1005 n. 5. The issues before us do not implicate the doctrine of law of the case.

ther a party nor in privity with a party to the proceedings that led up to the jury verdict of non-paternity.

■ M.C. was not a party to the original paternity action because section 13–22–101, 6A C.R.S. (1987), requires that a person be eighteen years of age or older to be competent to sue unless a guardian ad litem is appointed to represent that person. Merely naming an individual as a party in a petition or complaint does not make the person a party to the action. *People in Interest of E.E.A. v. J.M.*, 854 P.2d 1346, 1348 (Colo. App.1992). M.C. could not have been a party to the original action because M.C. was not eighteen years of age and was not represented by a guardian ad litem. Ch. 138, sec. 1, § 19–4–110, 1987 Colo. Sess. Laws 695, 796 (child shall be made a party to an action to determine paternity; neither child's mother nor father may represent child; and court may appoint guardian ad litem). Accordingly, M.C. was not a party to the original proceedings because she was not competent to sue in the absence of the appointment of a guardian ad litem.

■ M.C. was also not in privity with a party. In the absence of such privity, a non-party such as M.C. cannot be bound by the result of a prior proceeding under either res judicata or collateral estoppel principles.

*Denver v. Consolidated Ditches Co.*, 807 P.2d 23, 32 (Colo.1991) (res judicata, when applicable, bars parties and privies); *City & County of Denver v. Block 173*, 814 P.2d 824, 831 (Colo.1991) (party against whom collateral estoppel is to be applied must be a party or in privity with a party in the prior proceeding).

■ Privity between a party and a non-party requires both a "substantial identity of interests" and a "working or functional relationship ... in which the interests of the non-party are presented and protected by the party in the litigation." *Public Serv. Co. v. Osmose Wood Preserving, Inc.*, 813 P.2d 785, 787 (Colo.App.1991).

■ S.O.V. asserts that M.C. was in privity with the State in the proceedings that resulted in the jury verdict of non-paternity. That position is inconsistent with the provisions of the Uniform Parentage Act (the Act) in place during the relevant time.[5] The Act permits the State to bring an action to declare the existence of the father and child relationship under the circumstances present here. § 19–4–107.[6] The Act is carefully structured to assure that all interested persons are made parties to the action or given notice so that their interests can be protected.[7] A judgment obtained in compliance

---

5. The Uniform Parentage Act as in effect during the time of the proceedings leading to the jury verdict in this case appears at ch. 138, sec. 1, §§ 19–4–101 to –127, 1987 Colo. Sess. Laws 695, 793–800. All references in the remainder of this opinion will be to that version of the Act unless otherwise indicated.

6. These circumstances were that S.O.V. was presumed to be the father because the child was born within three hundred days after dissolution of marriage, § 19–4–105(1)(a), and blood tests showed the probability of parentage to be ninety-seven percent or higher, § 19–4–105(1)(f). Each of these circumstances independently raises a presumption of paternity.

7. At the times relevant to the present case, § 19–4–110 provided as follows:

> The child shall be made a party to the action. If he is a minor, the court may appoint a guardian ad litem. The child's mother or father may not represent the child as guardian or otherwise. The natural mother, each man presumed to be the father under section 19–4–

105, and each man alleged to be the natural father shall be made parties or, if not subject to the jurisdiction of the court, shall be given notice of the action in a manner prescribed by the court and an opportunity to be heard. The court may align the parties.

Originally, the statute provided that "the child *shall* be made a party" to a paternity action brought on his behalf, and "[i]f he is a minor he *shall* be represented by his general guardian or a guardian ad litem appointed by the court." Ch. 245, sec. 1, § 19–6–110, 1977 Colo. Sess. Laws 1010, 1013 (emphasis added). In 1981, the legislature deleted the sentence that required that the child be represented by his general guardian or a guardian ad litem and in its place provided: "The court *may* appoint a guardian ad litem." Ch. 231, Sec. 5, § 19–6–110, 1981 Colo. Sess. Laws 1027, 1028 (emphasis added). The statute continued to provide that the child *"shall* be made a party." *Id.* (emphasis added).

The court of appeals then held that notwithstanding the statutory change, it was necessary that a child be represented by a guardian ad litem or other fiduciary in order to satisfy the requirement that the "child shall be made a

with the Act "determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." § 19–4–116. The Act specifically provides that the child "shall be made a party" to an action for determination of paternity. § 19–4–110. Under such a provision the child is an indispensable party. *People in Interest of E.E.A. v. J.M.*, 854 P.2d 1346, 1347–48 (Colo.App.1992); *M.R.D., by P.D. v. F.M.*, 805 P.2d 1200, 1203 (Colo.App.1991). In order to make the child a party, it is necessary that the child be represented by a guardian ad litem or other fiduciary. *Interest of E.E.A.*, 854 P.2d at 1347–48; *M.R.D.*, 805 P.2d at 1203.[8] The legislature did not contemplate that the child would rely on the State, acting in a *parens patriae* capacity, to present and protect his or her interests. *Cf. E.E.A.*, 854 P.2d at 1348 (where statute required child be made a party in paternity action, this may not be accomplished by suit brought by mother as "next friend"); *Public Serv. Co.*, 813 P.2d at 787 (privity requires that the interests of a nonparty be presented and protected by a party in the litigation). The importance of full party status for the child is underscored by the fact that a judgment concerning paternity "is determinative for all purposes." § 19–4–116. Under this statutory scheme, we hold that M.C. was not in privity with the State.[9] To hold otherwise would permit evasion of the specific statutory requirement that the child be made a party and would undermine the child's rights so carefully protected under the Act.

The Act reflects the reality that a child's interests in a paternity proceeding are of a different and broader nature than those of the State. The State's primary interest is to obtain child support to assure that the child is not dependent on public resources. *See, e.g., Mills v. Habluetzel*, 456 U.S. 91, 103, 102 S.Ct. 1549, 1564–57, 71 L.Ed.2d 770 (1982) (O'Connor, J., concurring and joined by four other justices); *Spada v. Pauley*, 149 Mich. App. 196, 385 N.W.2d 746, 750 (1986); *Johnson v. Hunter*, 447 N.W.2d 871, 875 (Minn. 1989); *Settle v. Beasley*, 309 N.C. 616, 308 S.E.2d 288, 290 (1983). The child also has a strong interest in financial support during minority. *E.g., Bill v. Gossett*, 132 Ariz. 518, 647 P.2d 649, 654 (Ct.App.1982); *Johnson*, 447 N.W.2d at 875. The child's interests, however, extend beyond support to encompass other matters including the right to inheritance, information about family medical

party." *People in Interest of E.E.A. v. J.M.*, 854 P.2d 1346, 1348 (Colo.App.1992); *see supra* pp. 360–61 n. 7.

Finally, in 1993, the legislature further amended § 19–4–110 (a recodification of § 19–6–110) to provide that the child *"may* be made a party to the action." Ch. 210, sec. 3, § 19–4–110, 1993 Colo. Sess. Laws 952, 954–55 (now codified at § 19–4–110, 8B C.R.S. (1995 Supp.)) (emphasis added). The provision that "[t]he court *may* appoint a guardian ad litem" was continued in effect. *Id.* (emphasis added).

8. In *Interest of E.E.A.*, the court of appeals noted the conflict between the provision in § 19–4–110 that the child *shall* be made a party to a paternity action and the provision in the immediately following sentence that the court *may* appoint a guardian ad litem for the child. *Interest of E.E.A.*, 854 P.2d at 1347–48; *see* § 19–4–110. The conflict arises because under § 13–22–101, 6A C.R.S. (1987), "a minor to be competent to sue *must* be represented by an appropriate fiduciary." *Interest of E.E.A.*, 854 P.2d at 1349 (emphasis added). The court resolved the conflict by concluding that the "more significant interests" support a construction "requiring that a child be made a party and be represented individually by an appropriate fiduciary in every paternity action." *Id.* at 1350. The court concluded:

The intent behind the adoption of § 19–6–110 was to ensure that the child be made a party to the action because the child's interests may vary from those of his parents. Now to construe the statute to allow discretionary representation of the child as a party or representation of the child's interests by his parents would be to defeat the express purpose behind the statute as a whole. Therefore, we reject the argument of mother and the Department [of Social Services] that the child does not need individual representation in a paternity action.

*Id.* The court of appeals reached that same conclusion in *M.R.D.*, 805 P.2d at 1203, holding that "the court's denial of respondent's motion to appoint a guardian ad litem to represent the child's interests rendered the court without jurisdiction to enter a judgment on an action brought by or on behalf of the child."

9. As explained in note 6, *supra*, at 360–61, § 19–4–110 has since been amended to provide that the child "may" be made a party to the action. *See* § 19–4–110, 8B C.R.S. (1995 Supp.), reflecting a change made by ch. 210, sec. 3, § 19–4–110, 1993 Colo. Sess. Laws 952, 954–55. We express no opinion on the effect of this statutory change in circumstances to which the statute applies.

history, and intangible interests such as emotional and psychological benefits associated with an accurate establishment of paternity. *E.g., Spada*, 385 N.W.2d at 750 & n. 6; *Johnson*, 447 N.W.2d at 875; *Settle*, 308 S.E.2d at 290–91; *State ex rel. DHS v. Benjamin*, 183 W.Va. 220, 395 S.E.2d 220, 224 (1990). By mandating that a child be made a party to any proceeding under the Act to determine his or her paternity, the legislature properly recognized the difference between the interests of a child and those of his mother,[10] the purported father, and the State in such a proceeding.[11]

Based on the foregoing analysis, M.C. was neither a party nor in privity with a party in the proceedings that resulted in the jury verdict. Thus, an element essential to invoke the doctrines of res judicata and collateral estoppel is absent. For this independently sufficient reason, M.C. is not bound by the jury verdict of non-paternity.

### III.

For the foregoing reasons we affirm the judgment of the Colorado Court of Appeals, which reverses the dismissal of M.C.'s paternity petition and remands the case for further proceedings.

VOLLACK, C.J., dissents, and SCOTT and KOURLIS, JJ., join in the dissent.

**10.** It is also well recognized that a child's interests in a paternity action may differ from those of his or her mother. *See, e.g., Mills v. Habluetzel*, 456 U.S. 91, 100, 102 S.Ct. 1549, 1555, 71 L.Ed.2d 770 (1982); *id.* at 105 & n. 4, 102 S.Ct. at 1558 & n. 4 (O'Connor, J., concurring and joined by four other justices); *Pickett v. Brown*, 462 U.S. 1, 12–13, 103 S.Ct. 2199, 2206–07, 76 L.Ed.2d 372 (1982) (citing *Mills* (O'Connor, J., concurring) approvingly); *Ex Parte Snow*, 508 So.2d 266, 267–68 (Ala.1987); *Ruddock v. Ohls*, 91 Cal.App.3d 271, 154 Cal.Rptr. 87, 91 (1979); *Maller v. Cohen*, 176 Ill.App.3d 987, 126 Ill.Dec. 402, 404, 531 N.E.2d 1029, 1031 (1988) (citing *Pickett*, 462 U.S. at 12–13, 103 S.Ct. at 2206–07); *Arsenault v. Carrier*, 390 A.2d 1048, 1051 (Me. 1978); *Spada v. Pauley*, 149 Mich.App. 196, 385 N.W.2d 746, 750 (1986); *Johnson v. Norman*, 66 Ohio St.2d 186, 421 N.E.2d 124, 127 (1981); *Commonwealth Dept. of Social Services v. Johnson*, 7 Va.App. 614, 376 S.E.2d 787, 791 (1989); *Matter of Burley*, 33 Wash.App. 629, 658 P.2d 8,

Appendix A

to

*S.O.V. v. People*

No. 94SC727

The following constitute the final paragraphs of the trial court's order of April 5, 1993:

8. The Court concludes that the People (i.e. the Child Support Enforcement Unit for Delta County) did not have authority to represent the child in this action. As a result, the Court concludes that the Child was not properly represented in this action, and thus concludes that she was not properly a party in this case.

9. As a proponent of this conclusion the People urge the Court to act *sua sponte* in ordering a new trial because it did not have subject matter jurisdiction, and as a result to authorize a new trial. While this argument may be technically appropriate, the equity of the result has to be questioned. The People initially claimed to represent the child, but having failed to prevail on the merits of the paternity issue, they now seek to nullify the non-paternity verdict by claiming that they could not legally represent the Child. This argument is not supported by equity, and should not be accepted by the Court to the extent it works to the benefit of the People.

10. On the other hand, the Court must balance against such inequity the importance

11 (1983) (citing *Hayward v. Hansen*, 97 Wash.2d 614, 647 P.2d 1030, 1032 (1982)); *State ex rel. DHS v. Benjamin*, 183 W.Va. 220, 395 S.E.2d 220, 224 (1990). This too explains the legislative decision to require that a child be named as a party in a paternity action.

**11.** *Bill v. Gossett*, 132 Ariz. 518, 647 P.2d 649 (Ct.App.1982), upon which S.O.V. relies to support the conclusion that the State and M.C. were in privity, was decided under Arizona law. The decision in *Bill* contains no suggestion that the child was required by statute to be made a party, as mandated by the Colorado statute applicable to the case now before us. *Id.; see also* 4 Ariz. Rev.Stat. Ann §§ 12–843, –846 (1982) (containing no requirement that child be made a party in a paternity proceeding). Therefore, *Bill* offers no assistance in determining privity between a child and the State under the Uniform Parentage Act as in effect in Colorado at the times relevant to this case.

of having a correct determination of paternity because the present verdict leaves the child fatherless, there being no other man identified as a possible father.

11. Also, because the child was not properly represented in this case, her right to pursue a collateral attack on the judgment of non-paternity will be available for several years. This situation leaves the non-paternity judgment in doubt, and its lack of finality is not in the best interests of the Child, the Respondents, nor the People.

12. Therefore, the Court concludes that it should appoint a guardian ad litem for the subject Child to investigate the circumstances presented by the present status of this litigation and to determine whether the Child's interests warrant a collateral attack on the judgment represented by the jury's verdict of non-paternity.

IT IS THE COURT'S ORDER, That *Barbara Remmenga* is hereby appointed as guardian ad litem to represent the Child in this action to determine whether the Child's right to collaterally attack the judgment of non-paternity in this case should be exercised or not.

IT IS FURTHER ORDERED, That Ms. Remmenga shall investigate this litigation in light of the best interests of the Child. In this regard, Ms. Remmenga shall have full access to the Court's file and the transcripts of the record which were used on appeal. Counsel of record, Mr. Kolman for the People and Mr. Johnston for the Respondent, [S.O.V.], shall cooperate with Ms. Remmenga in providing information which she needs to make the investigation and the decisions required of her by this Order. Ms. Remmenga should include in her consideration an analysis of whether or not another trial would likely result in a verdict more favorable to the Child's interests.

IT IS FURTHER ORDERED, That not later than June 4, 1993, Ms. Remmenga shall file a written report with the Court concerning her decisions and recommendations as to

whether or not the Child should exercise of her right to collaterally attack the non-paternity judgment in this action. Upon receipt of said report, the Court will schedule a conference with all counsel, including Ms. Remmenga to determine how to proceed.

Chief Justice VOLLACK dissenting:

The majority holds that the doctrines of res judicata and collateral estoppel do not apply in this case "because no final judgment had been entered on the jury verdict when M.C. sought to intervene, and M.C.'s motion to intervene was filed in the same case in which the jury verdict was delivered." Maj. op. at 357. The majority also holds that the doctrines of res judicata and collateral estoppel do not bar M.C.'s claim because "M.C. was not a party or in privity with the State in the proceedings that led to the jury verdict of non-paternity." *Id.* I dissent because, contrary to the majority's conclusion, the record in this case indicates that a final judgment was entered on the jury verdict of non-paternity. Furthermore, I dissent because I believe that the doctrines of res judicata and collateral estoppel bar M.C.'s relitigation of the issue of S.O.V.'s paternity because M.C. was in privity with the State in the proceedings that led to the jury verdict.

I.

In 1989, the State brought a paternity action on behalf of M.C.,[1] naming M.C. as the petitioner and M.C.'s mother, D.L.C., and the putative father, S.O.V., as respondents. At trial, the State presented evidence that S.O.V. and D.L.C. were married when M.C. was conceived, and that blood test results indicated a 99.9 percent probability that S.O.V. was M.C.'s father. This evidence raised a rebuttable presumption of paternity pursuant to section 19–4–105, 8B C.R.S. (1994 Supp.). Nevertheless, at the conclusion of trial, the jury found that S.O.V. was not M.C.'s father. The State moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted the State's motion for judgment notwithstanding the verdict and held

1. At the time of the original paternity proceedings, M.C. was eight years old. She is now fifteen years old.

that S.O.V. was M.C.'s father based on the presumption raised at trial.

On appeal, the court of appeals reversed the trial court's judgment notwithstanding the verdict, holding that a reasonable jury believing S.O.V.'s testimony could have found that the presumption of paternity had been overcome. *People in the Interest of M.C.,* 844 P.2d 1313 (Colo.App.1992). The court of appeals reinstated the jury verdict and remanded the case to the trial court with directions to rule on the merits of the State's motion for a new trial based on alleged jury misconduct.

On remand, the State added a motion for a new trial on the grounds that the trial court lacked subject matter jurisdiction on the issue of paternity because M.C. had not been represented by a guardian ad litem in the original proceedings. On April 1, 1993, the trial court denied the State's motion for a new trial based on jury misconduct and took under advisement the State's motion for a new trial based on jurisdictional defect. On April 5, 1993, the trial court denied the State's motion for a new trial on the grounds of jurisdictional defect, thereby making the jury verdict of non-paternity a final judgment. The trial court determined, however, that M.C. at this time should be represented by a guardian ad litem because one was not appointed in the original proceedings. The trial court appointed a guardian ad litem to represent M.C. and to evaluate whether M.C. should collaterally attack the non-paternity judgment.

On June 3, 1993, the guardian ad litem recommended that M.C.'s interests would be best served by permitting M.C. to collaterally attack the judgment. On August 5, 1993, the trial court held a status conference, at which time the court directed M.C.'s attorney to file an independent paternity petition on M.C.'s behalf "either in this action or in a new case as his research dictates." On August 13, 1993, M.C. filed a motion to intervene and a new petition for declaration of paternity, both bearing the same case number as the paternity proceedings in which the original judgment was entered. S.O.V. then moved to dismiss M.C.'s new petition, arguing that M.C.'s claim was barred by the

doctrines of res judicata and collateral estoppel. On September 20, 1993, the trial court dismissed M.C.'s new petition for declaration of paternity. The trial court concluded that, although M.C. was not a party to the original action filed by the State, M.C. was in privity with the State, and that pursuant to the doctrines of res judicata and collateral estoppel, M.C. was bound by the jury's determination of non-paternity.

On appeal, M.C. asserted that she should be allowed to file a new petition for declaration of paternity because she was not in privity with the State in the original paternity proceedings. The court of appeals reversed the trial court's dismissal of M.C.'s new petition and held that M.C.'s interests in the litigation sufficiently diverged from those of the State so that M.C. was not in privity with the State in the original paternity proceedings.

## II.

The single issue before this court is whether the doctrines of res judicata or collateral estoppel operate to bar M.C. from collaterally attacking a jury finding of non-paternity in a prior proceeding brought by the State. The majority sufficiently sets out the requisites and effects of the doctrines of res judicata and collateral estoppel in section II of its opinion. Maj. op. at 358–59. However, the majority holds that these doctrines do not apply to the case at bar because a final judgment was not entered on the issue of S.O.V.'s paternity in the original paternity proceedings brought by the State. I dissent because, contrary to the majority's conclusion, the record on appeal indicates that a final judgment was in fact entered on the jury verdict of non-paternity.

## A.

The majority correctly states that "[a] final judgment is an essential prerequisite for the applicability" of the doctrines of res judicata and collateral estoppel. Maj. op. at 359. However, the record does not support the majority's conclusion that the doctrines of res judicata and collateral estoppel do not apply in this case because no final judgment

was entered in the original paternity proceedings brought by the State.[2]

In the proceedings brought by the State, the jury entered a verdict of non-paternity, and the trial court entered a judgment notwithstanding the verdict. On appeal, the court of appeals reinstated the judgment and remanded the case with directions to rule on the merits of the State's motion for a new trial. The trial court on remand denied the State's motion for a new trial based on jury misconduct and took under advisement the State's motion for a new trial based on jurisdictional grounds. However, I disagree with the majority's statement that at the time the trial court applied the doctrines of res judicata and collateral estoppel to bar M.C. from relitigating the issue of S.O.V.'s paternity, the jurisdictional defect issue remained pending.

To the contrary, on April 5, 1993, the trial court specifically denied the State's motion for a new trial based on jurisdictional defect. In its order denying the motion, the trial court effectively determined that the court of appeals' reinstatement of the judgment in this case was final. Furthermore, in its ruling of September 20, 1993, the trial court concluded that M.C. could not set aside the judgment on grounds of jurisdictional defect and pursue her paternity action against S.O.V. because she was in privity with the State and thus barred from relitigating the issue under the doctrines of res judicata and collateral estoppel.

### B.

The majority also states that the lack of a final judgment is reinforced by the fact that M.C.'s new petition for declaration of paternity and motion to intervene were filed under the same case number as the original paternity proceedings filed by the State. I disagree with the majority's conclusion that the fact that the case numbers are the same for both M.C.'s petition and the State's paternity proceedings affects the finality of the judgment. During a status conference on August 5, 1993, after the jury verdict had become final as to the State, the trial court directed M.C.'s attorney to file a new paternity petition on M.C.'s behalf either under the same case number as the State paternity proceedings or under a new case number. The mere fact that M.C.'s attorney chose to file M.C.'s new petition under the same case number as the State's paternity proceedings is not substantial enough to undermine the final judgment entered four months earlier on April 5, 1993.

Because the record in this case indicates that a final judgment was entered as to the jury's verdict of non-paternity, I dissent from the majority's conclusion that the doctrines of res judicata and collateral estoppel do not apply here.

### III.

It is necessary to now turn to the issue of whether M.C. and the State were in privity in the original paternity proceedings brought by the State. The majority holds that M.C. was not in privity with the State in the original action because M.C. and the State had divergent interests for establishing paternity. Maj. op. at 361–62. The majority also states that it would be inconsistent with the provisions of the Uniform Parentage Act (the UPA), §§ 19–4–101 to –130, 8B C.R.S. (1995 Supp.), to determine that M.C. and the State were in privity during the paternity proceedings brought by the State. Maj. op. at ——. I dissent because I believe that M.C. and the State were in privity during the original paternity proceedings brought by the State based on their substantial identity of interests in establishing S.O.V.'s paternity. I also dissent because I believe that, contrary to the majority's opinion, privity between M.C. and the State is entirely consistent with the provisions of the UPA.

---

**2.** It is noteworthy that the parties have never disputed the fact that a final judgment was entered on the jury's verdict of non-paternity. Similarly, the parties have never argued on appeal that the issue of jurisdictional defect remained pending at the time the trial court dismissed M.C.'s petition on the grounds that the doctrines of res judicata and collateral estoppel barred relitigation of S.O.V.'s paternity.

## A.

Privity exists when there is a working or functional relationship between a party and non-party such that the interests of the non-party are presented and protected by the party in litigation. *Public Serv. Co. v. Osmose Wood Preserving, Inc.,* 813 P.2d 785, 787 (Colo.App.1991). For privity to exist, there must be a substantial identity of interests between a party and a non-party so that the non-party is virtually represented in litigation. *Id.*

In the current case, there is a substantial identity of interests between the State and M.C. In the original paternity proceedings filed by the State, the relief sought was an order establishing S.O.V. as M.C.'s father and an order for S.O.V. to pay child support for M.C. This is the same relief requested in the new petition filed by M.C. Nevertheless, the majority states that M.C.'s interests are different from the State's interests in establishing paternity because M.C.'s interests may include "the right to inheritance, information about family medical history, and intangible interests such as emotional and psychological benefits." Maj. op. at 361–62. Although M.C. may have these distinct interests, the test for privity is whether the parties have a *substantial* identity of interests, not an *exact* identity of interests. Here, despite any variances in their purposes for establishing paternity, the State and M.C. essentially have the same underlying interest: determining whether S.O.V. is M.C.'s father for the benefit of M.C.[3] Thus, based on their substantial identity of interests in establishing S.O.V.'s paternity, it is clear that M.C. and the State were in privity during the original paternity proceedings brought by the State.

This conclusion is supported by the Arizona Court of Appeals decision in *Bill v. Gossett,* 132 Ariz. 518, 647 P.2d 649 (Ct.App. 1982), which held that the doctrine of res judicata bars a child from relitigating the alleged paternity of a putative father when the State has already initiated a paternity action because the State and the child are in privity in such cases. The Arizona court reached this conclusion despite its recognition that the child has interests distinct from those of the State. *Id.* The *Gossett* court reasoned that "the issue to be litigated and the effect on the child's rights to support" are the same whether the State or the child brings the paternity action. *Id.* The sound reasoning found in *Gossett,* that privity exists between a State and a child in a paternity action brought by the State on behalf of the child, should be followed here.[4]

## B.

The majority also states that, in paternity proceedings brought by the State where the child is not a party, it would be contrary to the provisions of the UPA to hold that the State and the child are in privity. I dissent because I believe that it is entirely consistent with the UPA to hold that the State and a child are in privity in such cases.

When the UPA was first adopted, it provided that "the child *shall* be made a party" to a paternity action brought on his behalf and that the child "*shall* be represented by his general guardian or a guardian ad litem" if he is a minor. § 19–6–110, 8B C.R.S. (1977) (emphasis added). Thus, the UPA initially *required* that a child be made a party to a paternity proceeding brought on his behalf and that a child be represented by a guardian ad litem in such proceedings.

At the time of the proceedings at issue, section 19–4–110, 8B C.R.S. (1989 Supp.), still provided that "the child *shall* be made a party" to a paternity action brought on his or her behalf. (Emphasis added.) However, section 19–4–110 was amended in 1981 to provide that if the child was a minor, "the court *may* appoint a guardian ad litem." (Emphasis added.) To the extent that this provision required that the child be made a

---

3. M.C.'s interests, although slightly different from those of the State, would be protected if the State successfully proved S.O.V.'s paternity.

4. *Gossett* appears to be the only recorded decision, and the majority cites no other decision, which addresses the question of whether a State and child are in privity in a paternity proceeding brought by the State where the child is not a party.

party but merely permitted the court to appoint a guardian ad litem for the child, it was inconsistent. *People in the Interest of E.E.A. v. J.M.*, 854 P.2d 1346 (Colo.App. 1992). In *E.E.A.*, the Colorado Court of Appeals interpreted this inconsistent statutory language and determined that section 19–4–110 *required* appointment of a guardian ad litem, despite the express permissive language of the statute. *Id.* at 1350.

Subsequent to the court of appeals decision in *E.E.A.*, the legislature again amended section 19–4–110, which now provides that a child *may* be made a party to a paternity action brought on ·his behalf and that a guardian ad litem *may* be appointed. § 19–4–110, 8B C.R.S. (1995 Supp.). In light of the statute's legislative history and the legislative amendment subsequent to *E.E.A.*, the statutory interpretation made by the court of appeals in *E.E.A.* should be disapproved. The UPA instead should be interpreted to merely permit—rather than require—the appointment of a guardian ad litem. More importantly, in light of such legislative history, the statute should be understood to contemplate that the State and a child are in privity where the child is not represented by a guardian ad litem, and that the child's interests therefore will be protected by the State. For the foregoing reasons, I believe that, contrary to the majority's conclusion, it is entirely consistent with the UPA to determine that the State and a child are in privity during paternity proceedings brought by the State on behalf of the child.[5]

The State, moreover, has a common law duty to represent children in certain situations under the doctrine of *parens patriae*. *E.P. v. District Court*, 696 P.2d 254, 258 (Colo.1985). When a State files suit in its role as *parens patriae*, it is in privity with the citizens it represents and such citizens are barred from bringing a later suit against the same defendant. *Satsky v. Paramount Communications, Inc.*, 778 F.Supp. 505, 510 (D.Colo.1991). In the case before us, the

State has an interest in determining that S.O.V. is M.C.'s father; and has an obligation under the doctrine of *parens patriae* to fairly and adequately represent M.C. in the paternity action.[6] Because the State brought a *parens patriae* suit on behalf of M.C. in this case, M.C. and the State were in privity in the paternity proceedings against S.O.V., and M.C. is barred from bringing a later suit based on the same claim.

### IV.

Because the record in this case indicates that a final judgment was entered on the jury's verdict of non-paternity, and because I believe that M.C. and the State were in privity during the paternity proceedings brought by the State, I dissent.

I am authorized to say that Justice SCOTT and Justice KOURLIS join in this dissent.

---

**5.** It is also noteworthy that the statute expressly prohibits a child's parent from representing the child as a guardian in a paternity action, but does not likewise prohibit the State from representing the child. § 19–4–110.

**6.** It is undisputed that the issue of S.O.V.'s paternity was fully and fairly litigated by the State. Because M.C. and the State were in privity in these paternity proceedings, M.C. also had the opportunity to fully and fairly litigate this issue.